No. 1794

Second Circuit Appeal

---

DR. G. H. CASSITY v. J. H. LOWERY

---

(February 3, 1925, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Physicians—Par. 6, 9.** Where a divorced husband employes a physician to render services to his divorced wife, the husband is responsible for the bill for professional services.

Appeal from the City Court, City of Shreveport, Hon. D. B. Samuels, Judge.

This is a suit by a physician for the collection of money for professional services.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

J. R. Blanton, of Shreveport, attorney for defendant and appellant.

Otis W. Bullock, of Shreveport, attorney for plaintiff and appellee.

STATEMENT OF THE CASE

REYNOLDS, J. This is a suit on an open account for $137.00, less $7.00, leaving a balance of $130.00, for medical services rendered to Mrs. J. H. Lowery.

Defendant denies liability and especially urges that he was divorced from his wife on March 10, 1920, before the medical services were rendered.

There was judgment for the plaintiff for the amount sued for and defendant has appealed.

OPINION

In this case plaintiff sues for medical services, consisting of one operation for appendicitis, for which he charges $100.00, and after-treatment, for which he charges $35.00, on which $7.00 was paid, leaving a balance of $130.00 sued for.

The defendant, J. H. Lowery, was divorced from his wife but this fact was not known to the attending physician, G. H. Cassity. Dr. Cassity was called to treat Mrs. Lowery by Mr. J. H. Lowery. See evidence, page 3.

"Q. Who employed you?
"A. Mr. J. H. Lowery."

The evidence shows that Mr. Lowery was present at each of the times Dr. Cassity visited Mrs. Lowery and that Mr. Lowery, though divorced from his wife, was as attentive and affectionate towards her as though no divorce had ever been granted.

Evidence, page 10:

"Q. Well, what was his attention towards the lady you were nursing?
"A. He came in and kissed her but did not stay very long. She told me he was her husband."

Evidence, page 12:

"Q. By what name was she known?
"A. As Mrs. Lowery.

"Q. What, if anything, did J. H. Lowery do while you were there?

"A. He came to see her.

"Q. What was his attitude towards her?

"A. He seemed very attentive.

"Q. Do you know how often he came to see her?

"A. He came every day, except the last day.

"Q. Did he refer to her as Mrs. Lowery in discussing the case with you?

"A. Yes.

"Q. Who paid the Schumpert sanitarium bill?

"A. He did."

He directed that Mrs. Lowery be carried to the Schumpert sanitarium. Later, being dissatisfied with the improvements that Mrs. Lowery was making, he directed that she be removed to the North Louisiana sanitarium where she was operated on by Dr. Cassity for appendicitis.

Dr. Cassity treated Mrs. Lowery at her home, at the Schumpert sanitarium and at the North Louisiana sanitarium, and finally operated on her for appendicitis. During all of his visits Mr. Lowery was present and he paid all of the sanitarium bills.

The defense set up by Mr. Lowery, fairly interpreted, is that the debt sued for is the promise to pay the debt of a third person and cannot be proved by parol testimony, and that being divorced from his wife he is in no way liable for the professional services rendered by Dr. Cassity to her.

This defense cannot avail Mr. Lowery for the reason that he employed Dr. Cassity to render the services and the bill for the services is against him and not against Mrs. Lowery.

The correctness of the bill is not disputed. Indeed, it is a very reasonable bill.

The judgment of the lower court is correct and is affirmed with costs in both courts.